**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

August 31, 2021

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

**VIA ECF**

Magistrate Judge Taryn A. Merkl
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   **Re:** *Bunay Sarmiento v The King of Tacos House, Inc., et. al.*
      <u>Civil Action No. 20-cv-01301 (TAM)</u>

Dear Judge Merkl:

   This office represents plaintiff Carlos Alfredo Bunay Sarmiento ("Sarmiento" or the "Plaintiff") in the above-referenced action. We write, jointly with counsel for The King of Tacos House, Inc. and Juan Fructuos Rivera (collectively, "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Counsel for the parties respectfully submit that the negotiated Settlement Agreement (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq.) constitutes a fair and reasonable compromise of this matter should be approved by the Court.

**I.**  **Procedural History and Settlement Negotiations**

   The Plaintiff commenced this action by sending Defendants a letter demand for payment of back wages, a draft complaint and damages analysis on June 27, 2019 (the "Demand Letter"), pertaining to his claims for unpaid wages and wage notification damages. While represented by Defendants' prior counsel, John J. Garzon, the parties reached a settlement in principle but were unable to finalize the settlement terms due to Defendants' alleged inability to pay the settlement funds. Ultimately, after several months of follow up, Plaintiff's counsel received notice that Mr. Garzon was no longer representing Defendants.

   After additional attempts to continue negotiations with Defendants, which attempts were not fruitful, Plaintiff proceeded with filing a Class & Collective Action Complaint in the Eastern District of New York ("EDNY") on March 10, 2020 (Dkt. No. 1 (the "Complaint")). On August 19, 2020, Defendants' present counsel, Stephen D. Hans, Esq., filed Defendants' Answer to the Complaint, denying all material allegations (Dkt. No. 8).

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

On August 24, 2020, Plaintiff's counsel forwarded a copy of the damages analysis Plaintiff had exchanged with the Demand Letter, in an attempt to reengage Defendants regarding their prior settlement agreement. Pursuant to the Joint Initial Conference Discovery Plan, Plaintiff exchanged his Fed. Civ. P. 26(a) Initial Disclosures on September 9, 2020, which included certain handwritten schedules and text messages between Plaintiff and his manager "Alex", and Defendant Rivera's daughter, Guillermina Rivera. Defendants advised that they were not in possession of any time or wage payment records for Plaintiff.

After several months of settlement discussions between counsel for the parties, the parties agreed to seek referral to the EDNY Mediation Program on March 19, 2021. (Dkt. No. 12). In anticipation of mediation, the parties were able to reach an agreement in principle to settle the action. On April 20, 2021, Plaintiff's counsel exchanged a draft settlement agreement reflecting the proposed terms. Over the course of the following several weeks, the parties reached an impasse regarding certain terms of the settlement and, on May 3, 2021, Defendants' counsel suggested that the parties should move forward with scheduling a mediation to reach a new agreement. In the meantime, the parties sought and were granted several extensions to the discovery deadlines in order to continue their settlement negotiations without having to divert resources to deposition discovery. (*See* Dkt. Nos. 13, 14, & 16).

The parties selected Barry Peek, Esq. as mediator from the EDNY Mediation Panel and attended a half-day mediation on August 2, 2021. At the mediation, with the assistance of Mr. Peek, the parties finalized the terms of the settlement and executed the Settlement Agreement submitted herewith.

**II.     The Settlement Accounts for Litigation Risk**

As set forth in the Complaint, Plaintiff is a former waiter for Defendants' restaurant located in East Elmhurst, New York. On average, Plaintiff alleges that he typically worked between forty-four and sixty (44-60) hours per week, and sometimes more as required by Defendants. Although Plaintiff typically worked well in excess of forty (40) hours per week, Plaintiff alleges that he was paid his regular shift rate for all hours worked, including hours worked in excess of forty (40) hours per week and therefore did not receive any overtime premium pay. For his work, throughout his employment period, Plaintiff alleges that he was paid a shift rate of twenty dollars ($20.00) for a single shift, for an effective hourly rate of two dollars and fifty cents ($2.50), and forty dollars ($40.00) for a double-shift, for an effective hourly rate of three dollars and thirty-three cents ($3.33). Therefore, on average, Plaintiff was typically paid between one hundred and twenty and one hundred and eighty dollars ($120-$180) per week. At all times, Plaintiff alleges that he received wage payments entirely in cash, with no wage statement detailing his hourly rate(s) or hours worked during the pay period. Plaintiff further alleges that was not properly compensated with spread-of-hours premiums equal to an additional hour at the applicable minimum wage for such days in which he worked in excess of ten (10)-hour shifts. Additionally, Plaintiff did not receive a wage notice nor any similar document.

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800
www.PeltonGraham.com

Defendants claim not to be in possession of any records with respect to Plaintiff's employment, nor have they provided any reasonable explanation for the lack of records. While Plaintiff was aware that Defendants required only certain employees to clock-in/clock-out, Plaintiff was never instructed or required to utilize this timekeeping system to clock-in/clock-out at the start and end of his shift. Plaintiff was instead advised his schedule through handwritten reports or text messages from his manager or Defendant Rivera's daughter. Although Plaintiff exchanged these handwritten reports in Plaintiff's initial disclosures, these reports do not contain information regarding the total hours worked, the corresponding pay periods, nor the wages Plaintiff received. As a result, Plaintiff has relied on his best recollection of the hours worked and the wages received in compensation for his work, and the damages analysis used by the parties throughout the settlement negotiations was based on this information.

Throughout the course of this action, the parties have engaged in good-faith negotiations and agreed to mediation to attempt to amicably resolve Plaintiff's claims and avoid the risk associated with proving Plaintiff's damages and the cost of protracted litigation. Indeed, taking into account Defendants' lack of document production and Plaintiff's belief that a factfinder would credit his testimony over the Defendants', Plaintiff recognizes that the absence of timekeeping and payroll documents for his employment period could potentially limit the amount of damages Plaintiff could recover at trial regarding his minimum wage, overtime, and spread-of-hours claims. Accordingly, Plaintiff prefers to settle now, on an individual basis, for an amount that he would be guaranteed to receive under the terms of the settlement. Although the parties dispute Defendants' alleged financial hardship, Plaintiff considers that it is in his best interest to settle now given the time and cost that has already been expended to reach this resolution during both rounds of negotiations with current and prior counsel.

Plaintiff's damages analysis calculated $121,379.02 in total damages, which amount includes $40,239.70 in unpaid minimum wages, $6,257.36 in unpaid overtime premiums, $2,057.00 in unpaid spread-of-hours premiums (for a total of $48,554.06 in "actual" unpaid wage damages), $48,554.06 in liquidated damages, $10,000.00 in wage statement and notice damages, and $14,270.90 in pre-judgment interest on Plaintiff's NYLL claims. The parties believe that the settlement amount (i.e., $50,000.00) and payment plan is mutually beneficial given the risks associated with establishing Defendants' liability and allows the parties to sever their relationship in an expeditious manner.

### III.     Settlement Terms

As set forth in the Settlement Agreement, the parties have agreed to settle this action for a total amount of $50,000.00 (the "Settlement Amount"), inclusive of attorney's fees and costs. Of the Settlement Amount, $17,333.33 is payable to Plaintiff's counsel (consisting of $1,000.00 in expenses and $16,333.33 in attorneys' fees). The remaining $32,666.67 is payable directly to Plaintiffs (the "Net Settlement Amount").

In keeping with the trend in this circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiff signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The Agreement also includes a mutual non-disparagement provision between Plaintiff and Defendants. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.,* No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement clause is mutual and binds Plaintiff and Defendant. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement provisions. *See Sadana v. Park Li, Ltd.*, No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual a non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement provision contains a "carve-out" clause permitting the Parties to make truthful statements regarding their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiff's rights under the FLSA and Defendants' interests in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.*, No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 ( S.D.N.Y. April 4, 2016) (approving a bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC*, No. 15-CV-2588 (AMD)(LB), 2016 U.S. Dist. LEXIS 29158 at *6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal a non-disparagement clause with a "carve-out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving a non-disparagement provision that "includes the

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

The mutual non-disparagement clause is bolstered by additional provisions that provide preliminary steps prior to either party exercising their right to commence an action in the event of a breach of the agreement in an agreed-upon forum, and to obtain reasonable attorneys' fees in the event that they prevail.

### IV.    Plaintiff's Attorney's Fees and Expenses

As set forth in the Affidavit of Brent E. Pelton, Esq., to date, Plaintiff's counsel has spent more than 60 hours in prosecuting and settling this matter, resulting in a lodestar of $15,260.83. Pelton Aff. Ex. C. Plaintiff's counsel has spent $1,000.00 in actual litigation costs, including filing and service of the complaint, and EDNY mediation fees. *Id*. at Ex. D. The portion of the settlement amount that Plaintiff seeks as attorneys' fees (i.e., $16,333.33) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs which represents a modest 1.07 times lodestar amount and is consistent with what was agreed upon between the Plaintiff and his counsel in his retainer agreement.

The hourly billing rates utilized by Plaintiff's counsel in calculating the lodestar are within the range paid to attorneys of similar experience and profession focus in the Eastern District of New York. In fact, the same rates have been approved in connection with a recent wage and hour default judgment in the Eastern District. *See, e.g., Guinea v. Garrido Food Corp.*, No 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (Providing that rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time and $125-$175 per hour for paralegal time. . .are reasonable and consistent with rates allowed in this district. Accordingly, Plaintiff's counsel submits that the attorneys' fees component of the settlement are fair and reasonable.

For the purposes of this settlement, Defendants take no position with respect to counsel's request for attorneys' fees and leave to the Court's determination provided that such attorneys' fees and costs are solely paid out of the Settlement Amount in accordance with the Settlement Agreement.

### V.    The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested

litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principle question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food*, 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreach" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations, including discussions and exchange of damages that took place over the course of several months, as well as a thorough and formal mediation process. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiff. Should the parties pursue further litigation, they would likely need to engage in substantial motion practice, including written discovery and depositions, which would consume a tremendous amount of time and resources. Rather than move forward with lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

\* \* \* \* \*

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any question regarding this submission.

Respectfully submitted,

By: /s/ *Brent E. Pelton*  
Brent E. Pelton, Esq.

By: /s/ *Stephen D. Hans*  
Stephen D. Hans, Esq.

**New York**: 111 Broadway, Suite 1503, New York, NY 10006 Tel. 212-385-9700 Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104 Tel. 415-437-9100 Fax 212-385-0800
www.PeltonGraham.com

Magistrate Judge Taryn A. Merkl
FLSA Settlement Fairness Letter
Page **7** of **7**

| | |
|---|---|
| Taylor B. Graham, Esq.<br>**PELTON GRAHAM LLC**<br>111 Broadway, Suite 1503<br>New York, New York 10006<br><br>*Attorneys for Plaintiff* | **Stephen D. Hans & Associates, P.C.**<br>30-30 Northern Blvd, Suite 401<br>Long Island City, New York 11101<br><br>*Attorneys for Defendants* |

Enclosure